Johnston, Chancellor.
James Glenn, of Chester, in this State, by the *244 first ten clauses of his will, gave specific legacies to his ten children, by name, of whom Gideon Glenn was one. The eleventh clause relates to the education of two of his sons. The twelfth clause is as follows : “ I lend to Elizabeth Glenn, my beloved wife, during widowhood, {or life, in case she does not marry) all my estate, real and personal, not stipulated as aforesaid, consisting of a tract of one huudred and fifty acres of land in Union District, and State aforesaid, on Broad River; one other tract of one hundred and fifty acres of land, in Chester District and State aforesaid, on Broad River, being the place whereon I now live; also eleven negroes, namely, Aaron, Esther, Mary, Mourning, Age, Samuel, Cato, Pompey, Jesse, Jacob, and Milley, with their increase, if any they should have ; also all my stock of horses, cattle, sheep, and hogs; which said property I ivish and de vise, at the marriage or death of my beloved wife, to be equally divided amongst my children, as above named, with one exception, relative to [the] dividend or share, falling to my beloved daughter, Hannah Carlisle, which is, I lend to her such dividend or share, during her life, and at her death, to go to the heirs of her body.”
The testator's son Gideon survived him, but was survived in his turn, by the testator’s widow, who continued discovert until her death. On her death, the original executors of the testator being dead, the defendant took out letters of administration de bonis non, with the will annexed ; and possessed himself of so much of the personalty in which she had the life interest under the will, as remained, or he could find; and has declined to account to the plaintiff, for one-tenth of it, which he claims, as the administrator de bonis non with the will of. Gideon Glenn annexed. The bill is filed among other things, to compel such account.
The plaintiff also claims an account of a share of Newton* Glenn, another son of James Glenn, — stating that by Newton’s death he became entitled to it; but in what way, the bill does not inform us. The only question argued before me, is, therefore, the only one I am to decide, and relates to the interest which Gideon took in the personal property under the twelfth clause of his father’s will. The plaintiff contending that he took a vested remainder, which was not lost by his dying before his mother ; the defendant, that his was a mere contingent .interest, which lapsed by his death, before the happening of the event on which its vesting depended.
The will, in point of form, does not limit over the property to the testator’s children, on their mother’s death or marriage, but merely directs, that on the happening of that event, it be equally divided among them. Yet I think the direction to divide it among them, substantially includes a bequest of it to them. Gideon, by surviving the testator, was in a condition to take under the will, whatever passed by the will. The will gave him a portion of the property, with a direction that it be allotted to him on his mother’s death. He could have taken it the day of his father’s death, and was withheld only by the preferable right of enjoyment, which the will conferred on his mother. Nothing but that prevented him. Here then was a present capacity to take whenever the possession should become vacant. This is the test of a vested interest — and an interest vested, is not lost by the dying of the person in whom it exists, before the period of its being actually enjoyed, — that only transmits it, in the case of realty, to his distributees or legatees, and in the case of personalty, *245 to bis representative.. The cases relied on by the defendant’s solicitors, were founded on wills wherein the testators had limited remainders to .such of their children as should be alive at the termination of the particular estates. Some of their children had died before that event, but left children, who claimed to stand in the place of their parents. What is the effect of these cases? The grand-children claimed as devisees themselves, and not as the distributees of the devisees. They claimed instead of, and not through, their ^parents. Their position was, that a devise to children living at the happening of the contingency, was a good devise to grand-children, then living. That “children” should be construed to extend to and mean grand-children also, and that of course, grand-children “then living,” would come within the description of the testator, and were in fact, devisees. Why were the grandchildren driven to take this position ? If they could have claimed successfully under or by transmission of rights through the parents, it would have been as beneficial to them. But if they had claimed in that way, it would have resulted, that no rights ever vested in their parents, in order to be transmitted to themselves. Why not ? Because their parents were never, in fact, devisees. The devisees were such children, and such only, as should be living at the happening of the contingency. Such was the description given in the will. Who should answer to that description, could not be known until the contingency happened. The devisees were made, as it were, ambulatory until that time; and the state of affairs which presented itself then, for the first time, disclosed who the devisees really were. The children who had died in the meantime were not devisees, and no right was transmitted through them.
But we gather from this an inference even favorable to the plaintiff in the case at bar. The parents of the grandchildren were excluded, not as children of the testator, because in that respect, they came within his description — but because they fell short of his description, in another particular: they were not living at the event pointed out by him. If they had been “ then living,” their rights would have been good — and they were excluded only by the force of the words “ then living.”
In the case at bar, Gideon came within the description of a “child above named,” and there is no description given to which he does not answer, so as to exclude him. The plaintiff is entitled to the account he claims. This is not, however, a case for costs. The parties have come here bona fide to settle what to them was a doubtful question.
*It is decreed that the defendant account to the plaintiff before the Commissioner, touching the personal property received by him, or for which he is chargeable. The parties to pay their own costs to be allowed them out of the estates which they respectively represent, if sufficient. — When the Commissioner’s report comes in, the decree will be pronounced for the amount. The remaining equities under the bill are reserved, until the expiration of the next Term ; unless the plaintiff shall in the meantime discontinue as to them. The further costs to arise out of their prosecution, are not included in the foregoing decree as to costs.
From this decree the defendant appealed on the ground : That from the words of the clause in the will of James Glenn, the property did not *246 vest in his children until the death of his widow, and Gideon Glenn having died before that time, his representatives cannot take under the will.
Thomson and Dawkins, for the appellant,
referred to 2 Salk. 415; Farr v. Blair, and Gordon v. Sims; MSS. cases; Columbia.
Williams, contra,
cited 3 Eq. Rep. 273; 2 Rob. on Wills, 112; Fearne, 149, 150 ; 2 Con. Rep. 91.